## SHIPLEY V. REASONER.

1. **Appeal:** QUESTIONS REVIEWED : FOUNDATION. Where defendant excepted to the overruling of his motion to direct a verdict for him, and to the overruling of his motion for judgment on the special findings, a motion for new trial was not necessary in order to secure a review, on appeal, of the questions involved in these motions. (See Code, sec. 3169.)

2. **Promissory Notes:** RECOVERY OF : CANCELLATION. The maker of a promissory note may maintain an action to recover possession thereof, when, under the facts, equity would decree its cancellation ; and cancellation will be decreed when there has been a full payment ; when the note is entirely void for want of consideration or other cause ; when the consideration has totally failed ; or when the maker, having the right to rescind the contract, does so, and returns, or offers to return, the consideration received, and the return of the note is demanded and refused. (See *Savery v. Hays*, 20 Iowa, 26, and *Sigler v. Hidy*, 56 Iowa, 504.)

3. **Contract:** GAMBLING : PUBLIC POLICY : IN PARI DELICTO. A contract whereby plaintiff gave his note for Bohemian oats at an unreal and extravagant price, in consideration of the agreement of the payee to sell for him the oats raised from those purchased at a like unreal and extravagant price, is not void as a gambling contract, under section 4029 of the Code, but is void as being against public policy, because it could be performed only by deception and fraud practiced upon others. (See *Merrill v. Packer*, ante, p. 542.) In such case, since both parties to the contract were parties to the intent to defraud, the law leaves them where it finds them, and will afford no relief to either ; and, in this case, held that plaintiff could not recover the possession of his note. (See *Langan v. Sankey*, 55 Iowa, 52, and *Steever v. Railway Co.*, 62 Iowa, 371.)

*Appeal from Madison District Court.*—HON. J. H. HENDERSON, Judge.

FILED, JUNE 5, 1890.

ACTION to recover possession of two promissory notes executed by the plaintiff to one Morse, and held by the defendant. The grounds alleged for recovering the notes are that defendant and others, by false and

fraudulent means, induced the plaintiff to execute said notes, the consideration for which was illegal, was against good morals and public policy, has wholly failed, and was for a gambling contract. The defendant contends that the notes were executed for a good and valuable consideration, and that he owns and is entitled to hold the same. The case was tried to a jury, and at the close of the testimony defendant moved the court to direct a verdict for defendant, which was overruled, and a verdict for the plaintiff and special findings returned. Defendant moved for judgment on the special findings, which being overruled, judgment was entered for plaintiff on the general verdict, from which defendant appeals.

There is but little conflict as to the facts, which are substantially as follows: On November 7, 1887, one G. B. Morse, representing an Ohio corporation called the "Crawford, Henry and Williams County Seed Company," proposed to sell to plaintiff fifty bushels of Bohemian oats, at ten dollars per bushel, and to give the bond of said company that it would sell one hundred bushels of Bohemian oats for the plaintiff at ten dollars per bushel, less twenty-five per cent. commission, on or before November 1, 1888. The plaintiff then and there accepted said offer, and executed and delivered to said Morse the two notes in controversy, for two hundred and fifty dollars each, payable to said Morse or bearer, on the first day of January, 1889, with ten per cent. interest, and received from said Morse the written agreement of said company to sell one hundred bushels of Bohemian oats for him at ten dollars per bushel, less twenty-five per cent. commission, on or before November 1, 1888. Appellee testified that he then knew that such oats had been in the eastern part of the county two years, and then knew as much about the manner of this company's doing business as he had learned since; that Reasoner was not there, and that Morse said Reasoner would furnish the oats, and that he (Shipley) should make an effort and raise a crop of oats, and if he did

not raise one they would sell for him anyway, and redeem their bond. One Lillis, who was present, denies that Morse said Reasoner would furnish the oats, and Reasoner denies that he had any arrangement with any person to furnish oats to Shipley. The notes were delivered by Morse to one Wilson, who was also doing business for the company. Appellee finding, as he states, that Reasoner was not going to furnish the oats, went to Wilson, November 29, 1887, to get back his notes. At the suggestion of Wilson, Shipley went some eleven miles into the country for Reasoner, and, on their arriving in town, it was agreed between these three that Reasoner should deliver to Shipley the fifty bushels of Bohemian oats, pay Wilson one hundred and twenty-five dollars' commission, and take the notes in controversy, Shipley and Reasoner to execute a writing as follows : "That, upon the terms hereinafter stated, the said A. H. Shipley has purchased of the said John Reasoner fifty bushels of Bohemian oats, and this day executes and delivers to said Reasoner his promissory notes for the sum of five hundred dollars, due January 1, 1889, with ten per cent. interest per annum. The said A. H. Shipley agrees to sow and cultivate said oats on his farm in section 26, Monroe township, being the north half of the southeast quarter of section 26, township 74, range 28; and it is further agreed by the parties hereto that the said Reasoner is to govern and control the disposition and sale of said oats, until this note is paid in full; and after said oats are threshed the said A. H. Shipley is not to sell or remove from his premises any of said oats without the order and consent of the said Reasoner or his agent, and, as fast as sales are made, the proceeds thereof are to be paid to said Reasoner, and the amounts credited on said note." In pursuance of this agreement, these parties executed said written agreement. Reasoner paid Wilson the one hundred and twenty-five dollars, receiving the notes in question, and thereafter delivered fifty bushels of Bohemian oats to Shipley, worth at least seventy-five cents

per bushel. Shipley sowed thirteen bushels, from which he raised one hundred and thirty-two bushels, the balance he fed to his pigs. There is no testimony tending to show that Shipley every returned, or offered to return, the fifty bushels of oats, or their value, nor that any one ever offered to sell any oats for Shipley, nor as to what was done with or about the crop raised.

*Dabney & Guiher*, for appellant.

*Steele, Leonard & Wainwright*, for appellee.

GIVEN, J.—I. Appellee contends that, as no new trial was asked by appellant, the only inquiry is whether the defendant was entitled to a judgment on the special findings, by reason of their inconsistency with the general verdict. "The supreme court may review or reverse, on appeal, any judgment or order of the district court or circuit court, although no motion for a new trial was made in such court." Code, sec. 3169. "A judgment or order shall not be reversed for an error which can be corrected on motion in an inferior court, until such motion has been made there, and overruled." Code, sec. 3168. The purpose of a motion for a new trial is to bring to the attention of the trial court questions to which its attention would not otherwise be called. While this court will not consider errors that have not been called to the attention of the trial court, it will consider all questions presented to the lower court upon which there was a ruling and exceptions taken, when the ruling is assigned as error and presented in argument. Appellant excepted to the overruling of his motion to direct a verdict for the defendant, and his motion for judgment on the special findings, and hence the question involved in these motions, being specifically pointed out and assigned and argued as errors, are before us for consideration.

*1. APPEAL: questions reviewed: foundation.*

II. The controlling question is whether the plaintiff was entitled to the immediate possession of the

**2. PROMISSORY notes: recovery of: cancellation.** promissory notes in question at the commencement of this action. The maker of a promissory note may maintain an action to recover possession thereof when under the facts equity would decree its cancellation. Cancellation will be decreed when there has been a full payment; when the note is entirely void for want of consideration or other cause; when the consideration has totally failed; or when the maker, having the right to rescind the contract, does so, and returns, or offers to return; the consideration received, and the return of the note is demanded and refused. In this connection, see *Savery v. Hays*, 20 Iowa, 26; *Sigler v. Hidy*, 56 Iowa, 504.

III. Appellee contends that the contract between plaintiff and the seed company was a gambling contract, and consequently void. This contract is identical with that in *Hanks v. Brown*, 79 Iowa, 590, so far as this question is concerned. In that case this court held that it was not a gambling contract, within the meaning of our Code. We have reviewed the question in the light of the arguments and authorities cited on rehearing, and in this case, and in *Merrill v. Packer*, ante, p. 542, and are still satisfied with the conclusion announced. Appellee also contends that this contract is contrary to public policy, and, therefore, void. It is identical with that in *Merrill v. Packer*, so far as the question of public policy is concerned. In that case we held the contract to be void as against public policy, and we see no reason why the same ruling should not be applied to this. The contract is not based upon any actual values, but upon confessedly extravagant and unreal values. It is not an honest, good-faith transaction, but a cunningly devised scheme to cheat and defraud. It could not be carried out without in the end deceiving some persons into paying many times the value of the oats. Both parties to the contract were parties to this intent to defraud, and hence the law leaves them where it finds them, and will afford no relief to either upon such a transaction. *Langan v.*

**3. CONTRACT: gambling: public policy: in pari delicto.**

*Sankey*, 55 Iowa, 52 ; *Steever. v. Railway Co.*, 62 Iowa, 371. While the notes are void, except as to innocent purchasers for value before due, yet equity will not decree a cancellation at the suit of a party to the fraud. The defendant's motion for a verdict in his favor should have been sustained.

IV. As the foregoing conclusion denies to the plaintiff the right to recover possession of the notes in controversy, it is unnecessary that we consider the other errors assigned and discussed, or that we determine anything as to the rights of the parties in an action to recover on the notes. The judgment of the district court is REVERSED.

# REPORTS

OF

## CASES IN LAW AND EQUITY,

DETERMINED IN THE

# SUPREME COURT

OF

## THE STATE OF IOWA,

AT

### DES MOINES, OCTOBER TERM, A. D. 1890.

IN THE FORTY-FOURTH YEAR OF THE STATE.

PRESENT:

HON. JAMES H. ROTHROCK, CHIEF JUSTICE.
HON. JOSEPH M. BECK,
HON. GIFFORD S. ROBINSON,  } JUSTICES.
HON. CHARLES T. GRANGER,
HON. JOSIAH GIVEN,